Lessee of RICHARD DIERMOND *against* MARY ROBINSON JAMES STEV-
ENSON, THOMAS RAMSAY, and WILLIAM MORRISON.

No child of an intestate can defeat the operation of the law respecting the appraisement
of lands; but their vendees or judgment creditors have a lien on the child's proportion
of the valuation money.   A plaintiff in ejectment may examine one of the defendants
as a witness with his own consent who has given up his possession.   On articles of
agreement for the sale of lands, if the vendor has made a conveyance to a third person
afterwards, it may be read in evidence, though such third person has not been made a
co-defendant.   Children entitled to the distribution of lands appraised, bound to give
refunding bonds under proper circumstances.

EJECTMENT for lands in Lycoming township, on the east side of
Susquehannah.

John Walker died intestate, seized of an improvement right to cer-
tain lands on Pine creek, leaving a widow and eight children.   On the
17th June 1785, a pre-emption warrant issued to Jane his widow and
William and Henry two of his sons, in trust for themselves and the other
children, on which a survey was made of 292 acres and 142 perches.

On the 3d October 1790, John Walker, the fifth son, applied to
the Orphans' Court for a partition or appraisement of these lands,
which were accordingly valued at 674*l*. 8*s*. 9*d*.; and on the 5th July
1791, all the sons refusing to take the premises at the valuation, they
wer confirmed to William Morrison, one of the defendants, who had
intermarried with Sarah, the eldest daughter of the deceased.   On
the 20th August 1791, three of the children conveyed their three-ninth
parts to Morrison, and he having made an agreement with the lessor
of the plaintiff in the same year for the sale of the lands, the same
was afterwards rescinded.   And on the 26th March 1792 he entered
into articles of agreement with Deirmond which were recorded in Au-
gust 1794) whereby Morrison covenanted to convey to Diermond all
the lands, on condition that he should pay to Morrison the full
valuation money, or should pay the valuation money to the re-
spective heirs, or should pay the creditors of those heirs, or should
take the place on the terms fixed by the Orphans' Court for payment
of the different heirs at his election.   On Diermonds performing any
one of the conditions, Morrison " binds himself in 1000*l*. to make
the conveyance, and covenants on such performance to give him pos-
session of the rents and profits.

On the same day, an appeal was entered from the decree of
the Orphans' Court to the Supreme Court, by the purchasers of

the shares of two others of the children, which was dismissed on the 15th September following, when Morrison obtained a patent for the land.

On the 30th November 1792, the Orphans' Court made a distribution of the valuation money, and accepted a recognizance from Morrison, with sufficient surety for the payment thereof, from which a second appeal was brought, which was also finally dismissed on the 25th January 1794.

Benjamin Walker, eldest son, and one of the administrators of his father, leased the lands to James Stevenson, (one of the defendants,) and Patrick Dunn, both of whom in the end of November 1792, accepted new leases from Morrison, and Morrison admitted the interest of the landlord to be in Diermond, with whom the rents in arrear were settled by the tenants in his presence, and he moreover delivered the possession of the premises to Diermond.

In July 1794, Diermond and Morrison, with their counsel, met at Sunbury by appointment. Diermond brought with him 538*l*. 1*s*. 3*d*., which he was willing to pay to Morrison, but insisted on a general warranty. The form of a conveyance had been previously agreed on by the counsel of both parties without such clause. At length, however Diermond was willing to accept a bond of indemnity, which was refused to him, and Morrison left town precipitately. In the afternoon of the same day, Diermond tendered to the justices of the Orphans' Court, which was then sitting, the money he had brought up, on account of the appraisement of the lands, but they refused to receive the same ; whereupon he brought his ejectment to the November term following.

It appeared that a suit had been brought to August term 1793, against Benjamin Walker, surviving administrator of the said John Walker, by Ephraim Benham, for lands which had been conveyed by the said John with general warranty, and which had afterwards been evicted under a better title. An amicable arbitration had taken place between the parties, on which 436*l*. 4*s*. 9*d*. had been awarded, but the award had not been formally subscribed. On the settlement of the administration account on the 21st November 1784, the sum of 48*l*. 9*s*. 5*d*. had been paid by the administrators beyond the amount of the personal estate of John Walker, deceased.

It further appeared, that three judgments had passed against one John Walker, which remained unsatisfied on record, but that one of them was had against another person of the same name, and the others had been discharged, though not so entered. Several judgments had also been obtained against the said William Morrison, Benjamin

Walker, William Walker and Henry Walker, previous to July 1791.

Diermond lodged 1835 dollars in court to pay off the remainder of the consideration of the premises, and Morrison brought into court 121*l*. 17*s*. 4*d*., the money he had received from Diermond, and the interest thereon, to repay the same to him.

In the course of the trial, it was admitted by the counsel on both sides, and resolved by the court, that no child or children of the intestate could by their acts defeat the operation of the law of 23d May 1764, (1 Dall. St. Laws, Append. 47,) as to the appraisement of the lands of the ancestor, when the same could not be divided without prejudice to or spoiling of the whole. By their deeds, they can transfer no more than their qualified interests in the land, and their assignees hold the same precisely in the same manner as they themselves held them, subject to an eventual appraisement. It is evident, that in the first instance, the lands are subjected to the payment of the patent's debts, and the purparts of each of the children are bound by judgments had against them respectively. When the real estate is transmuted into personalty, under the operation of the law, approved security being given in the Orphans' Court for the amount of the appraisement, the former incumbrances on the children's undivided shares of the lands cease, and are transferred into liens on their respective purparts of the valuation. The creditors by mortgage or judgment still retain a legal preference as to their demands to a proportion of the appraisement, corresponding with the children's interest in the lands.

The plaintiff offered James Stevenson, one of the defendants, as a witness. He was formerly a tenant of part of the lands, but had given up his possession in about seventeen months after the commencement of the ejectment, and was willing to be sworn.

The opposite counsel objected to him on the ground of interest, but on the court's mention of the opinion delivered in the case of lessee of Galloway and Patterson *v*. Hagerman, under similar circumstances, afterwards sanctified in bank, the objection was waived and the witness sworn.

The defendant's counsel offered in evidence a deed from Morrison and his wife to James Hepburn, esq. for the lands in dispute, in consideration of 665*l*. 0*s*. 11*d*., dated 10th October 1794, and recorded

on the 25th of the same month ; and it was contended, 1st. That Hepburn should be considered as landlord. 2d. That defendants might by any means show the title out of plaintiff. 3d, That this suit being in effect a bill in chancery to carry into specific execution a written agreement, if a change of circumstances had arisen from Diermond's non-performance of his agreement, equity would examine into those circumstances before a decree passed. 2. Pow. Cont. 260. 1 Bro. Parl. Cas. 27. 5 Vin. Abr. 538, pl. 18. Gro. and Rud. of Law and Eq. 18. A deed under seal shall be received in evidence. Dall. 63.

The plaintiff objected to reading of the deed, and insisted that the ejectment having been originally served on all the tenants in possession and Hepburn at the time having received his conveyance, he ought to have procured himself to be made a co-defendant. He shall not now try his title, where he has been guilty of laches, and without being subjected in case of failure to payment of costs. At last October assizes, Morrison was made a co-defendant by consent, and Hepburn might then have been placed in the same situation, if he chose to come in on equal terms. Under the stat. of 11 Geo. 2, c. 19, the landlord may by leave of the court, make himself defendant with the tenant in possession, in case he appear ; but it is *optional* in him to do so or not. 2 Espin, 165. To entitle him, he must be actual landlord, one who has been in possession, or has received rents. *Ib.* 166. 2 Crompt. Pract. 172, 173. Even an heir, who has not received rent, cannot be let in as a defendant. 3 Burr. 1293. So of a mortgagee, 2 Crompt. 173. So of a *cestui que trust*, not having been in possession. 3 Term Rep. 783.

It is not universally true, that a defendant in ejectment shall be permitted to show title out of the plaintiff; as in the case of mortgagor and mortgagee : but it is insisted, that Morrison cannot, by his own sale to another, affect a former deed made by himself, and previously recorded.

This suit may certainly be considered as a bill in equity in some respects, but in one particular it fails. The plaintiff could not make Hepburn a defendant in the ejectment, if he was not in actual possession. 1 Salk. 256.

By the court. Hepburn cannot be considered as landlord. If he had even received the profits of the estate, he could not be made a co-defendant at the time of trial without consent. He has slipped his time and should have applied earlier. To admit him now would be a surprise on the plaintiff.

In general, a defendant in ejectment may show the title out

of the plaintiff, (Hob. 103, 104. Vaugh. 7, 8, 58, 60. 1 Mod. 278. 2 Ld. Ray. 1293. 4 Burr. 2487. 2 Term Rep. 749) and thereby preclude him from recovery. But to this rule there are exceptions ; as the case put between mortgagor and mortgagee. So between landlord and tenant, (2 Show. 126) and one suing on a mere *jus possessionis* against a trespassser without claim of title. (Vaugh. 299. Cro. El. 322, 438. Cro. Jac. 437. 1 Wills. 72, 272. 2 Wils. 338, 339.) The title of a trustee in ejectment, shall not be set up against *cestui que trust.* (3 Burr. 1901.) No defendant shall shelter himself under a conveyance from himself to a third person not made party to the record, on legal principles.

But the analogy of this case to a bill in equity for a specific execution of articles, forms the most important consideration. It is true, the plaintiff could not make Hepburn a co-defendant, unless he was in possession of the premises ; and that a demurrer would lie against a bill in equity, where there were not the proper parties. (Mitf. Pract. 144, 145.) In some such cases, the chancellor has permitted a plaintiff to amend his bill. 2 Cha. Ca. 197. 2 Eq. Ca. Abr. 170.

Had Diermond sued for relief in Chancery, and Morrison in his answer had stated, that Diermond had trifled and shown backwardness in performing his part of the contract, so that Morrison had been compelled to sell the premises to another person, such second sale would indubitably be taken into consideration with all its circumstances, by a court of equity. If it was a *bona fide* transaction for a valuable consideration, without notice either express or implied, the Lord Chancellor would not impeach it ; but with such notice, the second purchaser would be considered as a trustee for the first contractor.

Considering the conveyance in this equitable point of view, the court are of opinion, that the deed should be received in evidence, and it was read accordingly.

But express notice was afterwards proved to have been given to Hepburn before he made the purchase.

When the evidence was closed, the defence was grounded on the laches and backwardness of Diermond, in not paying the whole consideration money ; and it was contended, that Morrison was under no legal obligation to give him a bond of indemnity.

But the court in their charge to the jury declared, that it would be highly unreasonable to expect that Diermond should go on with completing the purchase, while the appeals were depending from the proceedings in the Orphan's Court which might eventually annul the confirmation of the lands to Morrison. He ought to be secured when he

paid his money.    Moreover, the parties by their counsel mutually validated  the articles in July 1794, at ther appointed meeting.

Bonham's  demand  against the estate of  John Walker was not then regularly adjusted.    Three judgments stood against the same estate apparently unsatisfied ; several judgments stood against four of the children, the amount whereof could not then be ascertained.

The balance due to the administrators, and Bonham's debt, were entitled to preference  in  payment, and the shares of  the several children in the appraisement moneys must necessarily be diminished in proportion thereto.    The liens of the respective judgment creditors against the different children, must also be deducted from their purparts.    Under these circumstances, none of the children would be entitled to their shares of the valuation, unless they gave refunding bonds.    The Orphan's Court had refused to receive the money tendered by Diermond and make the appropriation.    This work he could not himself perform, but he was willing to pay the residue of  the valuation money if he received an indemnity, which was in  effect a refunding bond.    Express notice of the previous articles of  agreement has been traced to Hepburn before he made his contract, consequently he can claim no superior equity, but rests in the same situation with Morrison.    If therefore Diermond  has  lodged in court  the  full sum still remaining  due on his contract, this is such a case as chancery would refer the distribution of the money to a master, and decree the specific execution of the agreement, and the plaintiff would be entitled to recover.

Verdict for the plaintiff.

Messrs. Duncan, Walker and Wallace, *pro quer*.

Messrs Ingersoll, C. Smith and Hall, *pro def*.