The opinion of the Court was delivered by
Duncan J. —
This was an ejectment, brought by John Reading, ior seventy-five acres of land of which he had been *491 the owner. Judgments were obtained against him, and the property sold by the Sheriff to yofin Turner for one hundred and seventy-one dollars, the amount of all the liens ; and on J 7 7 the 3d August, 1804, the Sheriff acknowledged a deed to Turner on the receipt of the purchase money fro n him. The land would then have rented .for one hundred dollars per •year, and was worth eight or ten per acre. In 1805, Turner moved into one of the cabins on the land, and worked oue or two of the fields; and in 1806, Reading moved off, and he got into possession of the whole tract. He built a new house and barn, and made improvements to the value of at least one thousand dollars. He continued in the possession until 1810, when he sold to Peebles for twenty dollars per acre, who paid the full purchase money and received his deed, and .went into possession, and remained in possession. Turner, before' and after the sale, made repeated declarations that he had bought for Reading, and would let him have back the property, if he paid him his money ; and up to 1808, said, he was still holding the land for Reading. But it is not stated in the opinion of the Court filed, that Peebles ever made such declaration, or any declaration that he held as a trustee ; indeed from the sum paid by. him, it is against reason to believe that he ever could have made any such.
The question is first to be considered as between Reading and Turner, and next between Reading and Peebles. In this State, where we have no Court of Chancery, to compel the execution of a. trust, or the performance of a contract, from necessity our Courts of Common Law have assumed chancery powers, and the ejectment is substituted for the bill in chancery. It is an equitable action, and wherever chancery would execute a trust, or decree a conveyance, the Courts of this State, by the instrumentality of a jury, would direct a recovery in an ejectment. They, in the exercise of this power, would be governed by. the same rules as a Court of Chancery. The Court, in discharging this duty, are the judges whether the plaintiff is entitled to relief, and the extent and mode and manner of this relief. Nothing is submitted to the jury, but that which is their proper province, — > the ascertainment of the facts,'with instructions from the Court, that if the jury find the facts in a particular way, the plaintiff is entitled to relief or he is not j and if they find *492 facts that would require the interposition of chancery powers, then it is their duty to instruct them, in what manner, and to what extent, and on what terms the relief is to be granted. Thus the verdict may be moulded, and equity substantially attained. ' ‘
Would chancery grant relief here, by declaring Peebles a trustee, and direct him to convey to Reading ? Was any act to be done on the trial, or previous to the institution of the suit', and what were these acts ?
Though the Act of 21st March, 1772, for the prevention of frauds and perjuries, is copied from the Stat. of 29 C. II. yet it does not incorporate all the provisions of that Statute. .It among others omits the 7th'section respecting trusts. This omission cannot be imputed to accident; and from the cases of German v. Gabbald, 3 Binn. 304, and Wallace and another, v. Duffield and wife, 2 Serg. & Rawle, 521, it would seem, that the Act did not prevent any declaration of trust being made by parol. The provisions of the Act, as was observed in the first case by .the. Chief Justice, seemed rather to apply to legal than trust estates, and that there was nothing to prevent parol proof by which a trust might be inferred ; and even did the Statute apply in cases of fraud, and" where transactions have been carried on malafde, there is a resulting trust by operation of law. This is not a resulting trust, within the Stat. 29, C. H., for if a man merely employs another, by parol, as his agent to buy an estate for him, and the agent buys and pays for it with his own money, and takes the conveyance in his own name, it would be in the very teeth of the Statute to decree this to be a resulting trust. Bartlett v. Pickersgill, cited in 4 Burr, 2255. Sugden, 418. In Botsford v. Burr, 2 Johns. Ch. Rep. 405, will be fodnd a case very much resembling this, where it was held, that one who sets up such a trust, on a sale of his property on a mortgage, unless he has paid part of the consideration money, will not he allowed to shew by parol, that the purchase was made for his benefit. If, by the artifice of the purchaser declaring he was to buy for the owner; others were prevented from bidding, and the land Was sold at a great under value, this would make him a trustee. And parol evidence of the declaration of the purchaser, is admissible in this State ; yet it should be received with great caution. It js most unsatisfactory on account of *493 the ease with which it may be fabricated, and the impossibility of contradicting it; besides, the slightest mistake or failure of recollection, may totally alter the effect of the declaration; and the danger of mistake is greatly increased* when witnesses undertake to speak from mere memory of conversations, which took place at a period far removed, in a case where all depends on the gratuitous and naked declaration of a man who purchases with his own money, and makes a declaration that he would give back the land on being refunded the money. Where no time is mentioned, that the law would intend a reasonable time, and that fourteen years would be a time quite unreasonable, unless the trust were kept up by subsequent declarations, is an opinion, which I have formed with much consideration. But the' eight years after the sale to Peebles, would in reason' amount to a waiver and relinquishment of all benefit to be . derived from such declarations, unless there were subsequent declarations and acts of the purchaser, renewing and keeping alive the trust. If there had been an express agreement in writing to re-convey, and there had been this unreasonable delay and laches, improvements made by the purchaser, a sale, and an acquiescence in that sale for eight years, without any communication between the sgid purchaser and Reading, any extension of the time, that a Court of Chancery would decree a reconveyance on any terms, I very much doubt. Indeed my opinion is, that chancery would not j for though it be said that time is not, in equity, the essence of the contract, yet to entitle the party to the benefit of such contract, it must appear that he is desirous, prompt, and eager ; and therefore it is, that in equity, time is alone a sufficient bar to the aid of the Court. Sugden, 246. Where a purchaser suffers a long time to elapse without evincing a fixed, marked intention to carry his contract into execution, he will be left to his remedy by personal action for damages, though he may have paid part of the purchase money. Laches and neglect ought for ever to be discouraged. There is in chancery always a limitation. Nothing will bring a Court of Equity into action, but a pure equity, and a reasonable diligence. .The strongest equity may be forfeited by laches, or abandoned by acquiescence, In Youst v. Martin, 3 Serg. Rawle, 429, it is truly said, that a Court of Equity will not force a man to give up his *494 possession under circumstances of long acquiescence, without reimbursing the mont-y he had paid ; or if 'the improvements be expensive, or the lapse of time great, would he be compelled to give it up at all. It is a maxim, as well of equity as of law, leges subserviunt vigilantibus et non dormientibus. It is on this principle, that an unexecuted location, descriptive, or even warrant with money paid, loses its priority after a delay in executing the contract by survey, of much shorter continuance than was in this case. The claimant in opposition to the legal title, should not delay asserting his right, as a stale claim will meet with little attention. Delane v. Delane, 7 Br. P. C. 279. Sugden, 415. Where a contract has lain dormant for a period much shorter than this, and no step taken, and particularly where the property, by a subsequent event, proves to be much more valuable than it was when the contract took place, where nothing has been done by either party, where it is a mere gratuitous one, and where there is no mutuality, this is not such an agreement as equity would énforce. 1 Maddock's Ch. 329. But such agreement might, on evidence, appear to be left open and binding, by renovations. There is not evidence here, that there was any mutual contract between Reading and Turner, or that Reading ever assumed to pay Turner, and when, in addition to that, there was no fixed time, a performance would only be decreed within some reasonable time. Thirteen years would not be a reasonable time, unless as I have already. stated, it was renovated, and acknowledged from time to time to be binding b> the party against whom relief is prayed, and who holds the legal title. It appears to me, that the. remedy of Reading is against Turner. If he has violated his trust, he is responsible to Reading. But it is not a lien on the land, unless Peebles had actual notice from Reading of the trust and of his claim, and with such information and full knowledge, bought; for, in that case, he would be a purchaser mala fide, and stand in the same situation as Turner. The poverty of Reading cannot be a reason for keeping the matter open forever. But Turnerls declaration in 1808, that he bought for Reading and was keeping the possession for him, might make this a continuing trust up to that time. And if Chancery would decree an execution of the trust against Turner, it would decree an *495 account of all the permanent improvements made by Turner} considering them as improvements made by the trustee with the consent of the cestui que trust, and of the money paid for ' the land and the interest, deducting a fair rent for the land. On no other terms would a Court of Chancery interpose, than by complete indemnity to the trustee. On no other principle than this, that it was part of the trust, in execution of the trust, that the improvements were made. When Turner made the declaration in 1808, that all he wanted was his money back, it cannot be imputed to him, that he confined it to the purchase money of the land. It is a rule in equity, that cestui que trust shall save the trustee harmless as to all damages relating to the trust. Prec. in Ch. 419. And it is an universal rule, that equity will not interfere, unless the plaintiff consent to do that which the justice of the case requires. 1 Fonbl. 219. The only consideration that should exclude from the recovery of the improvements under such a trust as this is alleged to be, would be, where a man has acted fraudulently, and is conscious of the defect of his title, and with that consciousness on his mind, makes improvements with the design of improving cestui que trust out of his right. The money advanced by Turner to Reading to redeem his property from execution, would, according to the case of Frazer v. Hallowell, 1 Binn. 126, be considered as advanced on the security of the land. The case of Peebles rests on different principles from Turner. He is a purchaser, six years after Sheriff’s deed acknowledged, five years after possession delivered to.Turner, with improvements made of more than five times the amount of the original purchase money, undisturbed possession in him of eight years, having paid more than seven times the amount of the original purchase money. This trust has features distinct from all others. It neither appeared by any writing, nor did the possession continue in the cestui'que trust. There was no constructive notice, or notice which the law presumes, and which is conclusive. Possession, lis pendens, deed by which he claims furnishing evidence of notice, registered conveyance, these are conclusions of law, and hot of fact. And as relief could be granted only on account of Peeble's fraud, and that fraud consisting of a purchase-with notice of the trust, it must be made out by clear proof of actual notice. *496 It should not be a mere knowledge or report that Turner had declared he had bought for Reading ; for he might well have imagined, frbm the lapse of time,- that' all hopes of getting back the land had been relinquished by Reading. My opinion is, that in a case like this, the notice should be actual, circumstantial, in the transaction, by the party in interest, and that the Court should have instructed the jury, whether or not, believing all that the witnesses said, it amounted to actual notice, which is a simple fact, and that in instructing the jury, that the evidence of notice must either be positive or by implication of all the circumstances, the Court erred. Implication of a fact is different from presumption. '' There can, in a case like this, be no implied notice, for that is something different from actual. An implication is something not express. A jury might imply notice from the neighbourhood of the parties, from the infrequent association, from rumour: but the clear notice required by law, is actual, has a real form, to be established by direct proof. A necessary implication may arise on the construction of a will. The law may imply a promise on a consideration, that is not an express promise, but an implied one. Actual notice and implied notice differ widely. A purchaser of the legal title cannot be affected by any latent equity of which He has not actual notice, or which does not appear on some deed necessary to the deduction of his title. 1 Wash. 4. The strongest cáse which can be put, is that of a conveyance registered in the' proper county without due proof. This affords the strongest possible implication of actual notice ; yet this is not notice, nor to be left to á jury from which to imply notice. Heister v. Fortner, 2 Binn. 40. It must be proved that he knew exactly the state of the party having the equity, and knowing that, acquired the legal estate. Nothing short of this, which is actual fraud, will postpone his legal titles and the fraud must be very clearly proved. As under the Registry Acts, notice of the prior deed must be fully proved, and there appear to have been some fraud, or Chancery will not relieve. 3 Cruise, 363. 2 Atk. 275. The evidence of notice ought to amount to actual fraud, and must be very clearly proved. 2 Mass. 506. 3 Mass. 373. 4 Mass. 630. To give to a secret parol agreement a protection beyond an unregistered written conveyance, is what neither a Court of *497 law nor equity would do.' The true ground of the determinations in all cases of notice, is, that in itself it is a species of fraud, and takes away the bona fides of the purchaser, and puts him in mala fide. ■
In this equitable action of ejectment, which here is in the nature of a bill in equity to compel an execution of the trust, where a verdict and judgment resemble, in some degree, a decree of a conveyance, and where the action is against the man holding the legal title, who has not,only the law, but all the equity of Turner, where Turner had divested himself of every right to the land, and out of the land, on the receipt of a full consideration, a.sum being admitted to be due by the tender, and by the opinion of the Court, a tender being necessary previous to the commencement of the action, the tender should have been made to Peebles. It would be unjust to pay it to Turner, because he had no right to receive it. It would be an idle ceremony to demand a conveyance from Turner, who had nothing to convéy. For if Turner had received the money and executed a conveyance, Reading would stand just where he was. In every aspect of the case, the tender should have been made to Peebles. The sum tendered being admitted to be due, the money should have been in Court on the trial, ready to be' paid to the defendant, in case of a verdict for the plaintiff. Youst v. Martin, 3 Serg. W Rawle, 429. The Court make the payment the sine qua non of the recovery of possession. But even if Chancery would decree a'conveyance, giving further time for the payment of the money, yet they would .fix the time, and not leave it to be a trust interminable. If a Court of Chancery would say that seven years were not too long a time to repay the purchaser, they would at least say when it should have an end. It is against every notion of equity, that Peebles should continue the tenant at will of Reading, and that he should be turned out in the winter with his family, if it so pleased him, or dispossessed when he was about to put his sickle in his harvest. . Where money is due on a contract, the specific performance of which is intended to be inforced by ejectment, that the money should be brought into Court, on the trial, was the opinion of Justices Yeates and Smith, at Nisi Prius. Lessee of Diermond v. Robinson, 2 Yeates, 324.
*498 For these reasons, the judgment is reversed, and a venire facias de novo awarded. ' •
Judgment reversed, and a venire facias de novo awarded.