## Graham *against* Donaldson.

5 w 451
187   402

A plaintiff in an execution, having purchased the land of the defendant at sheriff's sale, upon an agreement that he would re-convey the same to the defendant, upon the payment of his judgment; the defendant did not act in relation to it for ten years; during which time, the purchaser took possession of the land, made valuable improvements upon it, and died in possession: Held, that the *cestui que trust* could not recover.

ERROR to the common pleas of *Butler* county.

Ejectment by Thomas Graham against Andrew Donaldson, for four hundred and thirty-nine acres of land. The legal title to the land had been in the plaintiff, against whom the defendant's father had obtained a judgment for 700 dollars, and had levied an execution on the land in dispute, which was subsequently sold by the sheriff, to the defendant, Andrew Donaldson, on the 4th of January 1825, for three hundred and fifty dollars. The plaintiff alleged that this purchase was made by the defendant as the agent of his father, in trust for him; and gave evidence that at the time of the sale he made an arrangement with the defendant, as his father's agent, that he should purchase the land at the lowest price it could be obtained for, and that it should be re-conveyed upon the payment of the judgment, upon which it was being sold. The defendant gave evidence to rebut the allegation of a trust, and also proved that he had not taken possession of the land for one year after the sale to him; and then he entered upon it, and made valuable improvements, to an amount exceeding 1000 dollars, and continued to occupy it uninterruptedly for ten years, when the present plaintiff, as his first act since the sale, tendered to him the amount of the judgment and interest; and demanded a re-conveyance of the land.

The court below (Bredin, President) was of opinion, that, assuming the fact of the existence of the trust, as alleged by the plaintiff, he was not entitled to recover, on the ground that the strongest equity may be forfeited by laches or abandoned by acquiescence. And that the facts of the purchaser entering into possession, and occupying the land for ten years, making valuable improvements; and the plaintiff taking no step during that time to obtain that which he might have made his own, nor until the land became twice as valuable as it had been when sold by the sheriff, were sufficient in equity to bar his recovery.

Verdict for defendant.

*Sullivan,* for plaintiff in error.

*Gilmore,* for defendant in error, contended that this ejectment was in the nature of a bill in equity, and the merits of the case became

[Graham v. Donaldson.]

material.  Keyser *v.* Keyser, 2 *Watts* 323.  That the plaintiff's
equity was forfeited by laches.  Peebles *v.* Reading, 8 *Serg. &
Rawle* 493.  He who claims on the ground of equity, must show
that he was prepared to do equity.  Thomas *v.* Wright, 9 *Serg. &
Rawle* 92; Givens *v.* M'Calmont, 4 *Watts* 463.

The opinion of the Court was delivered by

SERGEANT, J.  In this case the plaintiff seeks to recover back
land formerly his, on the ground of a trust created by parol, in con-
sequence of the agreement of the defendant's father, who purchased
it at sheriff's sale on his own judgment, to buy it in at considerably
less than its value, and permit the plaintiff to have it again on pay-
ment of the amount of his judgment.  It is not a case to be favoured
by a court of equity, because parol trusts are contrary to the letter
and spirit of the act against frauds and perjuries, and are calculated
to let in all the litigation, uncertainty and mischief which that act
intended to prevent, when it required, that interests in land, whether
legal or equitable, should be manifested by writing.  It is true, the
court has gone so far as to hold, that when one purchased at sheriff's
sale, in trust for another, and thereby prevented others from bidding,
it was a trust arising *ex maleficio,* and was one of the cases excepted
out of the act.  It would be a very different question, however, if
such conduct of the purchaser and the defendant, led to a judicial
sale, at less than the value of the premises, when there were other
lien creditors whose debts were left unpaid by the arrangement.
The rights of such lien creditors would not be defeated, and it might
even be doubtful whether the parties could legally enforce a contract
so contrary to the policy of the law, and the provisions of the stat-
utes against fraud.

But taking this to have been originally such a trust as was valid,
the question is, whether it is one which, under all the circumstances
of the case, a jury under the direction of the court, ought to enforce
by ejectment?  When it is said that in equity time is not of the es-
sence of the contract, the meaning is that if a day be stipulated, per-
formance at the appointed time is not indispensable.  Equity does
not regard that as essential, because many circumstances may inci-
dentally occur to prevent it, and its failure may admit of com-
pensation.  It is, therefore, not so material in the present case,
whether a time was fixed by the parties, or not.  But it does not
follow, because the time fixed is not essential, or none is fixed, that
the *cestui que trust* may lie by for any length of time, and may
permit a lapse of years without taking a single step; may allow
the purchaser to enter into possession, make valuable improvements,
use and consider the property as his own, die, and transmit it to his
children, and then when it has greatly increased in value, may com-
pel them to abandon their homes and surrender up the property at
any time it may suit him to take it.  He who asks equity must show
that he has done equity.  He must have performed, or offered to per-

form his part of the contract in a reasonable time. He must not wait to speculate on events; so that if the land should fall in value, he might leave it in the hands of the other party, but if it should rise, demand it. It cannot be supposed that such was the understanding of the parties. If he had such right, there is no limit to it. It may be enforced at the end of twenty, thirty or fifty years; for no statute of limitations interposes between a trustee and the *cestui que trust.* Property, under such circumstances, would lie unimproved, for few would be willing to build and improve a tract of land from which they could be dispossessed at any future period, at the option of another. The estate must be locked up in uncertainty of title, incapable of being employed for the benefit of the possessor, or for the advancement of his children, or of being disposed of by will. As between these parties, the arrangement was on the part of Donaldson a mere benevolence, not sought by him, but actively pressed on him by Graham. Donaldson waited a year before he took possession, allowing time for payment of the money, which he was anxious to receive. He afterwards went on and sold other land of the defendant's for the balance of the judgment, the whole of which defendant was to pay before receiving his land: conduct inconsistent with the subsistence of the trust then, and no declarations of his, subsequently, show he considered the trust subsisting. The plaintiff lay by for upwards of ten years without showing any disposition by payment or tender of money or otherwise, to perform his part of the contract, and permitted Donaldson to enter and continue in possession, make valuable improvements, die, and transmit it to his children; and the property is now stated to be worth more than twice as much, as at the time of sale; partly by the improvements placed on it by the defendants, and partly by the general rise of real estate. Surely such contracts must be understood as being intended to be performed within a short period—within a few years—when the circumstances are recent—before any very great change has occurred, and when the advantages of the parties continue mutual. Otherwise, one is bound, and the other loose, and there is no mutuality. In Reading *v.* Peebles, 8 *Serg. & Rawle* 484, a case in some of its features analagous to the present, Mr Justice DUNCAN refers to the authorities fully, and says, the strongest equity may be forfeited by laches, or abandoned by acquiescence. When a contract has lain dormant and no step taken, and particularly where the property, by subsequent events, proves to be much more valuable than it was when the contract took place, when nothing has been done by either party, where it is a mere gratuitous one, and when there is no mutuality, this is not such an agreement as equity would enforce.

It is unnecessary, therefore, to enter into the question of tender, because we are of opinion, that even if the plaintiff had tendered in due season, the moneys due, and the full value of the permanent improvements placed on the land, (which, at the least, he would have been equitably bound to do), yet the charge of the court and verdict

[Graham v. Donaldson.]

must have been for the defendant, on the ground, that under all the circumstances of the case the plaintiff had no equity to take the property from the defendant at so late a period.

Judgment affirmed.