## Seitzinger *against* Ridgway.

One verdict and judgment in an action of ejectment brought to compel the specific execution of articles of agreement for the purchase and sale of land, is conclusive between the parties, and a bar to any subsequent action; this action being in that case regarded as a bill in equity, and not as a possessory action at common law.

ERROR to the common pleas of *Schuylkill* county.

This was an action of ejectment by Thomas S. Ridgway against Jacob W. Seitzinger and others, to recover the possession of a tract of land containing ninety-nine acres and eighty perches, which the plaintiff had purchased, by articles of agreement from Conrad Keim, and which the said Keim subsequently sold to the defendants. This action was brought to enforce a specific execution of the following contract between Conrad Keim and Thomas S. Ridgway:

"For a valuable consideration, which I acknowledge to have received, I do hereby bind myself, my heirs and assigns, to grant and convey to Thomas S. Ridgway, his heirs and assigns, in a good and sufficient title, a certain tract or piece of land whereon George Kutz now resides, containing, agreeably to the patent, ninety-nine acres eighty perches, more or less, together with the saw-mill, dwelling, and all other appurtenances thereunto belonging, for and in

[Seitzinger v. Ridgway.]

consideration of 15 dollars to me in hand paid for each and every acre, at the delivery of the title, which is to be done in sixty days from this date; and in case Thomas S. Ridgway is not ready with the money at that time, then in that case the said Ridgway doth forfeit and bind himself to pay to Conrad Keim 100 dollars. In witness whereof, the said parties have hereunto set their hands and seals the 18th day of August 1828."

It appeared in evidence that in 1829 the plaintiff had brought an ejectment upon this agreement, to enforce a specific execution of it, and the cause was referred to arbitrators, who reported in favour of the defendant, from which there was no appeal; and in 1830 he brought a new action for the same land, for the same purpose, in which a verdict and judgment was rendered against him.

On the trial of this cause the defendants below took the ground that, inasmuch as the action was an equitable one, to enforce performance of an agreement for the purchase and sale of the land, one verdict and judgment was conclusive of the right, and therefore the plaintiff was now barred from recovering: but the court below ruled this point against the defendants, and a verdict and judgment were given against them. This point was twice argued in this court, and was the only one in the cause upon which an opinion was delivered.

*Hoffman* and *Greenough,* for plaintiffs in error.
*Loeser* and *Mallery,* for defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—This is an action of ejectment brought by Thomas S. Ridgway, the defendant in error, as plaintiff in the court below, against Jacob W. Seitzinger, Samuel P. Wetherill, Charles Wetherill, William P. Wetherill, Rebecca Gumbes, and Philip Deal, to recover the possession of a lot of land containing ninety-nine acres and eighty perches, which he claimed under an agreement made with Conrad Keim, owner at the time of the land, for the purchase of it. The defendants below claimed the land by a purchase and deed of conveyance from Keim, made subsequently to the agreement under which the plaintiff claimed. The agreement between Ridgway and Keim was reduced to writing, and executed by each under his hand and seal. It was purely of an executory character; the purchase-money was to be paid by Ridgway in sixty days from its date, when he was to be invested by Keim with the legal title to the land. This action, after a tender made by Ridgway, as was alleged, of the purchase-money to Keim, was instituted to recover possession of the land, and thus, in effect, to obtain a specific performance of the contract made for the purchase of it. On the trial of the cause in the court below, a bill of exceptions was taken by the defendant's counsel to the opinion of the court, rejecting the answers of witnesses to interrogatories propounded by them; several questions of law were also raised, and submitted to the court

[Seitzinger v. Ridgway.]

by the counsel on the part of the defendants, in order that they might be. answered by the court for the instruction and direction of the jury. Some of these questions were answered against the defendants below, and exceptions taken thereto by their counsel; as also to some parts of the charge delivered by the court to the jury. The exceptions thus taken have all been made the grounds of errors assigned here. It is thought unnecessary, however, to notice and pass an opinion upon any of them, except the answer of the court in the negative to the thirteenth proposition, submitted by the defendant's counsel. This is embraced in the fifth error. And as we are clearly of opinion that the court ought to have given an affirmative answer to the question involved in it, and as such answer goes to show that the plaintiff below can not maintain this action, it is .therefore rendered unnecessary to decide on the questions raised by the other errors.

Having no court of chancery in this state, and it being conceived that justice could not be administered in all cases without recourse to those principles which have been adopted and maintained in courts of equity in England, with a view to mitigate the extreme rigour of the common law in some instances, and again in others to prevent a failure of justice, our courts of law, with a like view, adopted in similar cases the principles which had governed courts of equity in England, so far as it was found practicable through the medium of common law forms of action and the intervention of a jury to do so. Equitable principles have thus become, and are regarded in Pennsylvania as part of the common law of the state. See Pollard v. Shaffer, 1 *Dall.* 211, 213, 214; Wicoff v. Coxe, 1 *Yeates* 358; Doorone v. Kelly, 1 *Dall.* 144; Wharton v. Morris, 1 *Dall.* 126: Stansbury v. Marks, 4 *Dall.* 130; Murray v. Williamson, 3 *Binn.* 135; Jordan v. Cooper, 3 *Serg. & Rawle* 578; Ebert v. Wood, 1 *Binn.* 217; Minsker v. Morrison, 2 *Yeates* 346. It has also been held that courts in Pennsylvania will still go farther, when the common law forms are inadequate to reach the equity of the case, and permit a declaration or a plea, as the case may require, to be framed, so as to suit the circumstances of it. Jordan v. Cooper, 3 *Serg. & Rawle* 578. And accordingly, in some instances it has been done. Pollard v. Shaffer, 1 *Dall.* 214; Long v. Keppele, 1 *Binn.* 579; Murray v. Williamson, 3 *Binn.* 135. So the courts of Pennsylvania have adopted the chancery principle of considering that as already done which a court of chancery would decree to be done; and upon this principle have allowed the vendee of land, under an executory contract in writing for the purchase of the same, to recover, in ejectment, the possession of it from the vendor, who was bound, according to the tenor of his agreement, to have made a deed of conveyance, investing the vendee with the legal title thereto. Hawn v. Norris, 4 *Binn.* 77; Vincent v. Huff, 4 *Serg. & Rawle* 301; Minsker v. Robinson, 2 *Yeates* 344; Marlin v. Willink, 7 *Serg. & Rawle* 298, 299. Thus ejectment has been substituted in this state for a bill in chancery, where a specific performance of

[*Seitzinger v. Ridgway.*]

a contract for the sale of land is desired; and wherever a court of chancery would entertain a bill and decree a specific performance of the contract, ejectment may be maintained here for the same purpose. Peebles *v.* Reading, 8 *Serg. & Rawle* 484. So, whereever a court of chancery would decree the execution of a trust, an ejectment may be supported. *Ibid.* In such cases the jury are to ascertain the facts, but then they are bound to receive the instruction of the court as to the equitable principle applicable to the facts of the case,the same as they are the law in relation to the same,and to decide accordingly. *Ibid.* Kuhn *v.* Nixon, 15 *Serg. & Rawle* 118. Now, since it appears that the ejectment in the case before us was brought by the vendee against the assignees of the vendor, who, as is alleged, had notice, at the time they bought, of the plaintiff's claim to the land, under his contract for the purchase of it, to compel, in effect, a specific performance of the contract in his favour; and that he brought at previous and different times two other ejectments for the like purpose, the first of which was determined against him by arbitrators, under the compulsory arbitration law, and the second decided also against him upon trial by the verdict of a jury and judgment of the court rendered thereon, the question arises, whether he ought not to be barred and concluded by either of these decisions from maintaining this action, in the same manner as he would have been by a decree of a court of chancery had against him, in case we had such court, and he had filed his bill therein for a specific performance, and after a full and final hearing his bill had been dismissed. Though it may be in the discretion of a court of chancery to decree a performance in specie or not, according to the circumstances of the case as they shall be made to appear, *Ch. Cas.* 42, yet after the discretion of the court has been exercised, and a final decree made, either dismissing the bill, or carrying the contract into execution specifically, it becomes, as in every other case, binding upon all the parties, and their privies afterwards. *Com. Dig.* tit. Decree (Y. 2); and no new or second original bill can be filed again for the same cause, so as to affect or alter the decree on the first bill, unless when obtained by fraud. Chancellor Kent, in speaking of this point in Gelston *v.* Codwise, 1 *Johns. Ch. Rep.* 195, 196, declares, " it is well settled, that a decree can never be impeached by an original bill; it can only be questioned by a bill of review. If a decree could be altered, or varied by an original bill, a cause, as it has been frequently observed, would never be at rest, and there would be confusion and inconsistency in the decrees of the court;" and for this he cites Read *v.* Hambey, 1 *Ch. Cas.* 44; Taylor *v.* Sharp, 3 *P. Wms.* 371; Wortley *v.* Birkhead, 3 *Atk.* 809; 2 *Ves.* 571; Shepherd *v.* Tilley, 2 *Atk.* 348. A bill of review in a court of chancery may be considered in the nature of a writ of error in the courts of common law, by means whereof the decree of the former may be reversed or changed, in like manner as the judgment of the latter may upon a writ of error. So

[Seitzinger v. Ridgway.]

a decree of a court of chancery may be revised, upon an appeal to a higher court of chancery powers, having appellate jurisdiction; but until reversed, either upon a rehearing granted or bill of review allowed, according to the rules of the court, or upon an appeal taken, it must remain in full force and conclusively binding upon the parties. It would seem then, that if ‚there had been a court of chancery in this state, and the vendee, the plaintiff below, had filed his bill therein for a specific performance of the contract, when he brought his first ejectment for that purpose, and upon a final hearing on his bill the cause had been decided against him, he would have been concluded from filing another original bill for the same cause. But having no court of chancery, and ejectment being the form·of action which was resorted to here by the vendee, from necessity, for the purpose of procuring a specific performance of the contract against the assignees of the vendor, and the cause having been decided against him, why should not the judgment rendered therein, upon a full investigation and trial of the matter, whether by a tribunal composed of arbitrators or of a court and jury, either being competent and having jurisdiction thereof, be conclusive, and put an end to all further litigation, on account of the same matter, between the parties. The action of ejectment in such case cannot, with strict propriety, be regarded as founded upon the same basis, or brought with the same view as at common law. At common law it is founded upon either an actual or supposed tort or trespass, committed by the defendant in expelling the plaintiff from his possession of the land, and being grounded upon a violation of the *right of possession* merely, has therefore ever been regarded as a possessory action. But the ejectment in the case under consideration, has for its basis the violation of a contract made by the plaintiff below with the assignor of the defendants for the purchase of the land, and is brought to obtain the possession in fulfilment of a personal obligation arising therefrom. So it is occasionally brought by the vendor against the vendee, for the purpose of enforcing the performance of a mere personal obligation to pay the purchase-money arising from the contract, where the vendee has been put into the possession under the contract, without his having paid it; or otherwise, upon his failure to pay, of compelling him to give up the possession again to the vendor. Where, however, the vendee has not received or taken the possession of the land, and the vendor is desirous to have the contract fulfilled, he has no means of enforcing a specific performance of it by the vendee, except by a personal action against him for a breach of it, in not having paid the purchase-money according to the tenor and effect of it. Then suppose that he brings such action, and upon the trial thereof a verdict and judgment is rendered against him in favour of the vendee, or that he only recovers nominal damages, it will not be pretended, I apprehend, that he could institute and maintain a second action thereafter, of any kind, for the same cause. But if the vendee,

[Seitzinger v. Ridgway.]

after failing in his first ejectment, is permitted to maintain and recover subsequently, in a second ejectment, brought for the same purpose as the first, it is clear that he has what may be considered a great advantage over the vendor, in having at least two chances allowed to him to obtain a performance of the contract in his favour, instead of one, which is all that the vendor can have in such case. Hence it is plain, that if this doctrine were to prevail, though the obligations growing out of the contract are mutual and reciprocal, the remedies of the parties respectively for a breach thereof would not be so. But it would seem to be just as well, and as equitable, that the vendee should be restricted and confined to one action, the same as the vendor, so that in this respect they shall be placed upon an equal footing, and their chances of success be the same. Unless there be some positive enactment of the legislature on the subject, directing it otherwise, no sufficient reason, as it appears, has been offered why the rule in regard to both should not be alike. It must be borne in mind here, that the purpose for which this ejectment was brought, is not such as it could have been maintained for at common law. It is used, in this case, purely from necessity, as a substitute for a bill in equity, to obtain, in effect, a specific performance of the contract which the plaintiff below made for the purchase of the land, by having the actual possession of it transferred from the assignees of the vendor, by means of a recovery. But being a substitute merely for a bill in equity, why should not a judgment rendered upon a trial had therein, be as final and conclusive as a final decree of a court of equity pronounced upon a bill for a specific performance? It has been argued that every action of ejectment, even when used as a substitute for a bill in equity, to obtain a specific performance of a contract for the sale of land, by the vendee against the vendor or his assigns, necessarily involves in it the plaintiff's right to the land, or title under which he claims to be put into the possession of it; and that the right of property in land being of a much more permanent and valuable nature than property in those things which are not only fluctuating, but of a perishable nature, and the title to it oftentimes attended with great difficulty and complexity, and has therefore been considered a matter of too much importance and difficulty to be settled finally without at least two concurring verdicts and judgments thereon, in two successive actions for that purpose. This argument, however, seems to be founded upon a misapprehension of the reason, why at common law, actions of ejectment might be brought without limitation as to number, by the same plaintiff against the same defendant, for the same land. For in England, from which we at first derived this action, adopting the same form and course of proceeding that was observed and pursued there, it was only used by the plaintiff to establish simply his *right to the possession* of the land, and to recover the same; it was considered as founded upon a trespass, committed by the defendant, in having unlawfully expel-

IX.—2 s

[Scitzinger v. Ridgway.]

led the plaintiff from his possession, and was never brought, and indeed could not have been maintained, where the plaintiff, though invested with the *right of property* in the land, so as to have recovered in a writ of right, yet had not the *right of possession.* His right of possession was, in general, claimed to be derived from a lease of the land made to him by the proprietor for a term of years. Now it is very apparent that the *right of property*, consisting of a fee simple in land, is of infinitely more value and importance, and the title thereto generally much more intricate, than the right or title to the possession of it can be under a lease for a term of a few years, perhaps not more than five or six. Yet in a writ of right, which was the only action, that the party having the right of property, unaccompanied by the right to the possession, could bring in order to establish his right to the land, and recover possession thereof, the judgment rendered therein by the court, upon an investigation of the plaintiff's claim to the right of property in the land, was final, and concluded the parties from all further litigation on the subject. No second action, of the same kind, could be maintained afterwards by either party, in opposition to the judgment rendered in the first. The true reason, however, as I take it, why the law was different in cases of ejectment, was, because the right to the bare possession of land was liable to frequent changes, by being passed from one person to another, so that although the same man, when he commenced his first action of ejectment, might have no right to possession, and therefore fail to recover, yet he might acquire it shortly thereafter, and thus entitle himself to maintain the second action. And so it was that the claim to the possession of the land in every subsequent action of ejectment was, in contemplation of law at least, founded upon a right alleged to have been acquired under a new and different lease from that set forth in any preceding action; and, consequently, the judgment rendered in a prior ejectment could be no bar to a recovery in one brought subsequently upon a different right. This fiction, however, in form of the plaintiff's claiming in ejectment his right to the possession, under a lease from the owner of the land, for a term of years, has been done away with in Pennsylvania by an act of the legislature, passed in 1806; and the form of a writ to be used in future, is thereby prescribed, resembling, in some degree, a writ of right. Still, however, it was generally thought that the right to bring and maintain a second or third, &c. action of ejectment, in those cases where it might have been previously maintained at common law by the same plaintiff for the same land against the same defendant, upon the same title, set up in the preceding action or actions, was not taken away by the change of proceeding directed by the act. But in the following year a supplementary act was passed, removing some doubts and difficulties which had arisen in regard to the meaning of the first act, and declaring also that " where two verdicts shall, in any writ of ejectment between the same parties, be given in succession for the plaintiff or defend-

[*Seitzinger v. Ridgway.*]

ant, and judgment be rendered thereon, no new ejectment shall be brought; but when there may be verdict against verdict between the same parties, and judgment thereon, a third ejectment in such case, and verdict and judgment thereon, shall be final and conclusive, and bar the right." Under this provision of the supplementary act of 1807, it has been contended, and indeed insisted on, that nothing short of two previous concurring *verdicts*, and *judgments thereon.* against the plaintiff below, can form a bar to his recovery in this third action. It is very obvious, however, that the legislature did not intend, by this provision, to extend the right of bringing and maintaining actions of ejectment for the same lands under the same titles or claims; but, on the contrary, to reduce and restrict the right, in this respect, and not to enlarge it. So that, if the plaintiff below, in this case, would have been bound, before the act of 1807, by the decisions and judgments given against him in the previous actions of ejectment, it would seem to follow as a fair conclusion, that he must be so now, notwithstanding the provision of the act of 1807. It does not appear that the question made here was ever raised and passed on judicially before that act came into operation; nor does it appear to have been so since. There may, perhaps, be one or two casual *dicta* tending to favour the doctrine of the counsel for the defendant in error, but they were made when the question was not before the court, and, therefore, most likely without much, if any, previous consideration. At least they can have no weight, if found, upon deliberate consideration, after a full and careful examination of the subject, to be contrary not only to the interests of the public at large, by keeping up an endless scene of litigation, without promoting justice in the slightest degree between the parties litigant, but contrary likewise to the well established rule which makes one judgment, in a suit brought in a court of chancery, for the purpose of obtaining a specific performance of a contract made for the sale of land, final and conclusive between the same parties and those claiming under them. To permit a second or third action of ejectment to be maintained in such case, for the purpose of settling the matter in controversy between the parties, would tend, in some instances, to produce a state of confusion, arising from the discrepancy that there might be in the different verdicts and judgments thereon, that would unsettle and render the respective rights of the parties still more uncertain, if possible, than before the commencement of the first action. For instance, a vendee, who claims that he has paid the whole of the purchase-money to the vendor, brings his action of ejectment to recover the possession of the land, and the jury find specially that he has only paid a part of the purchase-money, stating, also, that a balance of a certain amount still remains unpaid, and that upon his paying this amount into court, with the costs of the action, forthwith, they find for him; otherwise, they find for the defendant. But the plaintiff being dissatisfied with the verdict, declines paying

·[Seitzinger v. Ridgway.]

the money required by the verdict of the jury, brings a second action of ejectment, wherein the jury find specially as the jury did in the first action, making the balance, however, remaining still unpaid, considerably less. The finding of the jury, however, not being alike in this particular in both actions, and the plaintiff not being content with the amount of money found to be due from him in either case, institutes a third action, in which the jury find that he paid the whole of the purchase-money before the commencement of the first action, and therefore give a general verdict in his favour, with six cents damages and six cents costs. Now what is to be done under such discrepancy in the finding of the several juries? Shall the plaintiff, according to the finding of the last jury and judgment thereon by the court, take possession of the land and hold it for ever? Or may the defendant therein, after being turned out of the possession, turn round and bring his action of ejectment, and have the same matter investigated and tried again, with a view to compel the payment of a portion of the purchase-money which he claims as still unpaid; because a vendor may maintain ejectment where the vendee is in possession, and the whole or any part of the purchase-money has become payable and remains unpaid, for the purpose of compelling the payment of it. Michell *v.* De Roche, 1 *Yeates* 12; Martin *v.* Willink, 7 *Serg. & Rawle* 297. If the judgment in the first action is not to be regarded as conclusive between the parties, there is no reason why the second or third should, nor yet why any two should, because no two of them agree. But suppose the vendor is permitted to have the matter in dispute fully examined and tried again in his action, and the jury find a much larger balance of the purchase-money to be still owing to him by the vendee than either of the juries found in the first two actions. Would not confusion thus become more confounded? And what, perhaps, would still be more alarming, the course of litigation between the parties become interminable and endless. Again, take the case of a vendor, who has let the vendee into possession of the land under the contract, upon receiving part of the purchase-money, and afterwards, upon a dispute arising between them as to the amount of the balance that remains unpaid, the vendor institutes an ejectment against the vendee, and upon trial thereof the jury give a verdict for the plaintiff, to be released upon the defendant's paying a certain sum of money as the balance of the purchase-money, together with the costs of the action; but the defendant, conceiving the sum to be more than he really owes, refuses payment of the money, and suffers himself to be turned out of the possession by the plaintiff; can he then, after tendering a less sum to the vendor, who refuses to receive it, bring his action of ejectment, and have it left to the jury again as an open question of fact, to be decided by them, which of the two sums is the correct balance due? If so, when and how is the controversy to be ended, if it should happen that no two juries could agree precisely on the same sum as the balance still due. In these

[Seitzinger v. Ridgway.]

cases it is perfectly evident, that the question in dispute is not who or which of the parties has the title to the land, as in cases of ejectment at common law, but whether the contract for the purchase of it has been fulfilled by the vendee, or whether he is entitled upon principles of equity, according to the tenor of the contract, to have a fulfilment or specific performance of it by the vendor. So that there is really no greater reason for allowing a second action of ejectment to be sustained in such case, than there would be for permitting a second action of covenant to be maintained for a breach of the same covenants in the agreement.

But this subject may be still further illustrated. It has been said that ejectment will lie in this state to enforce the payment of money charged upon land, and that such actions have been resorted to and maintained for that purpose, where no other remedy could be had. Galbraith *v.* Fenton, 3 *Serg. & Rawle* 361; Gause *v.* Wiley, 4 *Serg. & Rawle* 528. Now suppose an ejectment is instituted, with a view to compel the payment of money charged upon the land, for which the action is brought, that the defendant alleges it has been paid, and upon trial, the payment of the money being the point in issue, the jury in effect find that it has been paid, by finding a general verdict for the defendant, upon which the court render judgment; or suppose the jury find a verdict in favour of the plaintiff, to be released upon the payment of a certain sum of money by the defendant, whereon the court give judgment; can either party, I would ask, after the result of the action, thus, in either way, maintain a second ejectment for the purpose of trying the same question over again? It must strike the legal mind, I think, as being singularly anomalous if he could. So ejectment may be supported by a mortgagee, to recover or compel the payment of money which has become payable under the mortgage, and remains unpaid. Smith *v.* Buchannan, 1 *Yeates* 13. But has it ever been imagined by any one, that the mortgagee, after bringing such action, and a verdict of a jury, and judgment of the court thereon had against him, on the ground that they believed the money claimed was all paid, could sustain a second action for the same claim? I am inclined to believe that it never has; and certainly if it be that it has, it seems impossible that it could be sustained either upon reason or any analogous principle of either law or equity. The purpose and object sought to be obtained in bringing actions of ejectment in all such cases, as well as the grounds and principles upon which they are supported, are certainly different from those which prevail and govern in actions of ejectment at common law. And hence the act of assembly of 1807 could never have been intended by the legislature to have any application to actions of ejectment, when brought, either to compel the payment of money, or a specific performance of a contract for the purchase of land. It has been objected, however, that it does not appear upon the record of this case, for what purpose the previous actions of ejectment , the records of which were given in evi-

IX.—2 s*

dence on the trial, were brought by Ridgway, the plaintiff below. It appears, however, very clearly that they were decided against him; and by the charge of the court to the jury, which is sufficient to show that they were instituted, or at least that the first was, for the same purpose with the present action. For the president judge, in the last paragraph of the charge, says, " He (meaning the plaintiff) brought suit about eight or nine months after the time specified in the contract for its execution." It is certain that the suit here spoken of is not the present one, for it was not commenced until five years after that time. But the first action of ejectment, brought by Ridgway, was instituted by him between eight and nine months afterwards, as the president judge says. And the judge noticed it to the jury, in the manner recited above, for the purpose of repelling, as it would seem, the charge of negligence brought against the plaintiff below, in not having commenced and prosecuted his claim by suit earlier; thus showing clearly that the first ejectment tried and decided by arbitrators against the plaintiff, was brought for the same purpose as the present; and no doubt the second ejectment was brought also to enforce the same claim; but even if it were not, it would make no difference, because the determination of the first against the plaintiff below is sufficient to bar the present action. We, therefore, think that the court below ought to have answered the thirteenth proposition, submitted by the counsel for the defendant below, in the affirmative instead of the negative.

Huston, J.—I have no doubt that, in many cases, it can do no good to write and publish an opinion differing from the majority of the court; but there are cases in which it is proper to do so; cases on constitutional questions, and sometimes on the effects of acts of assembly, would seem to be among those in which it may be proper that a judge should make known his opinion.

The action of ejectment, though one of the most common in use, is yet spoken of very loosely, both in and out of court. In 1806 the form of the action was changed, but it was soon decided that it was changed only in form: that in substance it was the same, and generally as much under the power of the court, to be modified, so as to answer the ends of justice, as the old form was. 1 *Serg. & Rawle* 311. In 1807 some alterations were made. Before this act several ejectments might be brought in succession between the same parties for the same land. By the fourth section it is provided, " when two verdicts shall, *in any writ of ejectment* between the same parties, be given in succession for the plaintiff or defendant, and judgment be rendered thereon, no new ejectment shall be brought; but where there may be verdict against verdict between the same parties, and judgment thereon, a third ejectment in such case, and verdict and judgment thereon, shall be final and conclusive, and bar the right."

The phrase, an equitable ejectment, is in common use, but is

used very vaguely. Wherever the title of the plaintiff or defendant is such that in England it would not avail in a court of law, and yet might be available in a court of chancery, it may be called an equitable ejectment. Greatly more than half our ejectments are of this description. If brought in chancery, or rather if redress was sought in chancery, one hearing and decree would be conclusive; if thus we establish that wherever in chancery one decree would end the dispute, in such cases one trial in ejectment shall be conclusive, we shall render the act of 1807 nearly useless.

The ejectment to obtain possession on articles of agreement on payment or tender of purchase-money, or for vendor to recover possession, because the price was not paid, and the proofs which might be adduced on either side in such cases, was as usual in practice in and long before 1807 as it is now, and was as well understood by courts and lawyers as it is now; but until very lately this objection was unknown in the profession and in court. We find such cases in the first and second volumes of Dallas's Reports. In Yeates's Reports, from the beginning. In Billington *v* Welsh, 2 *Binn.* 184, Tilghman, C. J. says the party may have another trial. Youst *v.* Martin, 3 *Serg. & Rawle*, 423, was an ejectment by a vendee on articles, who had been evicted. It would be endless to cite cases where this was done.

In 14 *Serg. & Rawle* 301, Tilghman, C. J., says, " This section (above quoted) was drawn with great care and caution, because the object was to deprive one of the parties of a right which had been enjoyed before, of bringing a third ejectment after the loss of two verdicts and judgments. The intention is clearly expressed, that to bar the right there must be not only two judgments, but two verdicts preceding them." He never anticipated that one verdict and judgment would be deemed conclusive.

In 1 *Watts* 337, 338, it is treated as settled, that less than two verdicts and judgments in the same way will not bar; in the same case it is said, " the refusal to grant a *venire de novo* in the supreme court, may furnish ground to believe that it was thought another trial would not be available, but cannot prevent the party from bringing a new ejectment, in case he finds he can supply what testimony was wanting before, or in any way overcome the difficulties or objections interposed to his recovery at the first trial. Now difficulties and objections occur as often in suits on articles of agreement as in any other ejectments, and in many cases can be met and overcome on more preparation and fuller consideration. I need not say that in chancery there may in proper cases be a bill of review; the present decision makes one trial final in such cases. I would not, however, have written this opinion, if it had not been from a settled conviction that an act of assembly, considered plain in its terms, and so decided to be from its enactment until the last few years, as I believe, is not under the control of the court, and a construction which in effect repeals it in a large and important

class of cases, ought not to be made when that construction cuts off the party, as well in past as in future cases, from what for more than thirty years was universally considered a right secured by act of assembly, and sanctioned by the uniform decision of every court.

Judgment reversed.