# Lykens *versus* Tower and Whelan.

Where one by a written agreement contracted to erect a house for another, and as a part of the consideration agreed to take a lot of ground at a stipulated price, but was not to have any title until the building was completed, and while the building was in progress, on the faith of his contract obtained the possession of the lot, but did not finish and complete the building according to the contract, and the other party conveyed the lot to another with notice of the facts, who was in possession,

*Held*, that the vendee not having performed the conditions upon which the title was to be made, was not entitled to demand a conveyance, although when he first obtained the possession he had performed work to an amount equal to the stipulated price of the lot.

The Act of 21st April, 1846, makes one judgment in ejectment conclusive, only in such cases "wherein time becomes of the essence in the finding of the jury, or in a judgment by confession, by fixing a time for such payment."

[Lykens v. Tower.]

Where the verdict in the case was rendered before the passage of the Act of 30th April, 1850, even if it be in force without the enrolment of the private act in which it is contained, it would not operate on the action; and that independent of the Act of 8th May, 1850.

ERROR to the Common Pleas of *Schuylkill county.*

This was an ejectment brought by Isaac P. Lykens against Charlemagne Tower and William Whelan, to recover a lot of ground on Mahantongo street, in the borough of Pottsville, on which was erected a brick dwelling-house.

On the 8th of August, 1845, Jacob Geisse and Isaac P. Lykens, the plaintiff, entered into an agreement in writing, in which Lykens agreed to build for Geisse, on or before the 1st day of April, 1846, a hotel, according to certain plans and specifications. The hotel was to be built on a lot belonging to Geisse, in Centre Street, Pottsville, and to be called " The Eagle Hotel." Lykens was to find all the materials, and have all the work done, and when the hotel was finished, to give Geisse the possession of it without further charge or trouble; extra work to be paid for at a valuation. In consideration of which, Geisse agreed to pay Lykens $7500, to be paid on orders drawn on Geisse by Lykens as the work progressed, to enable him to pay for the labour and materials. The agreement also contained the following clause: " and the said Lykens also agrees to take a certain lot owned by the said Geisse, and by him purchased of Henry Shelly, on Mahantongo street, in said borough, at the price of seven hundred dollars, to be a part of the consideration-money above-mentioned; but the said Lykens is not to have any title to said lot of ground until the completion of said hotel, at which time the said Geisse agrees to make to him or his assigns a good deed for the same."

Sometime in the fall of 1845, while the work on the hotel was in progress, Lykens took possession of the lot mentioned in the agreement, and proved on the trial that Geisse said to a number of individuals that the lot belonged to Lykens. To a person who called upon him in the presence of Lykens to purchase the lot, he said that the lot belonged to the latter. When the street commissioners notified him to have his sidewalks in front of the lot paved, he referred them to Lykens, alleging he had sold it to him, and the latter being notified by the officers, had the pavement made. And on several occasions when individuals who had performed work at or furnished materials for the hotel building called with orders from Lykens, Geisse refused to pay the orders, alleging that what money he had paid, and the price of the lot, were equal to the work done at the building.

On the 31st January, 1846, Geisse and wife conveyed by deed of that date, the lot in controversy to William Whelan, and gave the latter a judgment in the penal sum of $2500 to indemnify him

against three several judgments of $100 each, standing open against Geisse, and also against the claim of Lykens under the article of agreement above-recited.

Lykens continued to work at the hotel, and about the 1st of April, 1846, Geisse moved into it with his family and opened it as a hotel, Lykens continuing to do some work at various parts of the building until some time in May, 1846. The building was never entirely completed by Lykens, there being still some work to be performed at it when he finally left off, the amount or value of which did not appear in any part of the case.

To December Term, 1846, Lykens brought an action of eject-ment for the lot in dispute, against Whelan, who had obtained possession under his deed, and in June, 1849, a verdict and judg-ment were rendered in the cause for the defendant. And that judgment was affirmed on a writ of error brought to this court. The case is reported with the evidence in 3 *Harris* 483.

On the trial of the present cause this verdict and judgment were set up by Whelan, and Tower who occupies under Whelan, as a bar to this ejectment, because the first suit was founded upon an equitable title under the articles of agreement.

The plaintiff presented the following points, and prayed the instruction of the court thereon to the jury.

1. Although the written agreement given in evidence contains the stipulation, "that the said Lykens is not to have any title to the said lot of ground until the completion of the said hotel, at which time the said Geisse agrees to make him or his assigns a good deed for the same," yet, if the jury believe from the evidence in the case that after the signing of the said agreement, and after Lykens had done more than seven hundred dollars' worth of work on the building, that Geisse agreed with Lykens that the lot was paid for by work done on said building, and that the lot then be-longed to Lykens, and that Lykens then entered into possession of it with the assent of Geisse, and expended money on it, the equitable title to the lot became vested in Lykens, and is sufficient to enable him to recover in this suit.

2. That the written agreement between Geisse and Lykens given in evidence, does not mention any time when the lot was to be taken by Lykens in payment, on account of work done and ma-terials furnished by him, and it was competent for Geisse and Lykens by parol, at any time while the title to the lot remained in Geisse, to agree with Lykens that the lot should be taken by Lykens in payment for his work, and if the jury believe from the evidence in the case that Geisse, while he retained the ownership of the lot, did agree with Lykens that the lot was paid for by work done at the building, and that Lykens took the lot in pay-ment to the amount thereof as so much money on account of his work, that the equitable title and interest in the lot became vested

[Lykens v. Tower.]

in Lykens, and nothing remained in Geisse but the legal title, and that no subsequent breach of the written contract, if any such occurred on the part of Lykens, would divest the equitable title acquired by Lykens in the lot.

3. That if the jury believe the evidence of Matthias Riffle, Richard Owens, Bernard Reilly, and Isaac Severn, that the lot was paid for by work done at the hotel, and the equitable interest and title of the lot was vested in Lykens, and in order to recover in this action, he is not obliged to show that he afterwards finished the building.

The court below (HEGINS, P. J.) answered these points as follows :—

The court charged the jury that the previous action of eject-ment given in evidence, barred the present action, and directed a verdict for the defendants.

As the court were about to direct the entry of the verdict, the plaintiff's counsel put to the court a number of points in writing, and request their instruction to the jury thereupon. The court answered under their view, as above stated, the points are imma-terial, but *pro forma* as the counsel desire the opinion of the Su-Supreme Court upon them, the court answer the points in the negative.

A verdict was accordingly entered for the defendants.

The above instruction, and the answer to the points, were the errors assigned.

*Parry*, for plaintiff in error.—Neither the first nor the present action was brought to enforce or rescind a contract for the sale of land, and consequently they do not fall within the principle of Seitzinger v. Ridgway, 9 *Watts* 496 ; which in Amick v. Oyler, 1 *Casey* 508, is declared to be, " that one trial and judgment in an ejectment to enforce or rescind a contract for the sale of land is conclusive of the rights of the parties." The plaintiff claimed a possession which had been delivered in pursuance of a sale, and payment of the full consideration; this in contemplation of law clothed him with the legal title: D'Arras v. Keyser, 2 *Casey* 252. The defendant in that action was no party or privy to any con-tract under which the plaintiff claimed. If the verdict and judg-ment had been the other way, they would not have barred Whelan. Estoppels must be mutual: 1 *Sm. Lead. Cas.* 658, *note by Hare & Wallace.*

If the facts are as stated in the first point they show a sale, delivery of possession, and payment of the purchase-money, and expenditure by the vendee in improvements. These would vest a complete title in the vendee: Moody v. Vandyke, 4 *Binn.* 41 ; Vincent v. Huff, 4 *S. & R.* 301. The stipulation that Lykens

[Lykens *v.* Tower.]

was to have no title till the hotel was completed could be waived by parol: Bottsford *v.* Burr, 2 *John. Ch. Rep.* 405; Boyce *v.* McCullough, 3 *W. & S.* 433.

When a thing is delivered in pursuance of a bargain, the title will pass: Clemens *v.* Davis, 7 *Barr* 263; 1 *Sto. Eq.* 79.

The title thus vested in Lykens could not be divested without his consent: Bussler *v.* Meesly, 2 *S. & R.* 352; Harris *v.* Bell, 10 *Id.* 390; Gregg *v.* Patterson, 9 *W. & S.* 207. And the equitable title thus acquired was sufficient to either maintain or defend an ejectment: Moody *v.* Vandyke, 4 *Binn.* 44; Vincent *v.* Huff, 4 *S. & R.* 301; Congregation *v.* Johnson, 1 *W. & S.* 41.

*Loeser* and *Hughes*, with whom was *Wells*, for defendants in error.—The only real question which arises is whether the previous ejectment bars the present action. It can make no difference what position is now assumed, if the parties and the subject-matter are the same in both suits. If the first suit was founded upon an equitable title under articles of agreement, the judgment of the court below is right. It barred the present action: Seitzinger *v.* Ridgway, 9 *Watts* 496; Amick *v.* Oyler, 1 *Casey* 506. Whether the decision in that case was *right* or wrong it is conclusive: Heller *v.* Jones, 4 *Binn.* 60; Heimes *v.* Jacobs, 1 *P. R.* 152; Morgan *v.* Plumb, 9 *Wend.* 287; 1 *John. Cas.* 492.

By referring to the charge of the court in the former case, it will be seen that the merits of the case were really passed upon, as well as the outstanding title. But if it were even otherwise, if the plaintiff failed to make out his case owing to defect in his proof, it would affect the merits of his case the same as if directly passed upon.

The case of D'Arras *v.* Keyser, 2 *Casey* 249, was the case of a vendee *wrongfully put out of possession*. But the principle has no application to the case at bar.

The case of Amick *v.* Oyler, 1 *Casey* 506, fully affirms the doctrine of Seitzinger *v.* Ridgway, and holds that the former law of 5th May, 1841, *P. L.* 445, perhaps intended to assail the doctrine of Seitzinger *v.* Ridgway, but it was substantially vindicated by the legislature by Act of 21st April, 1846, and fully reinstated by the repeal of the law of 1841, by the Acts of the 30th April and 8th May, 1850, § 13, *P. L.* 716,

Plaintiff's own evidence in this case most clearly shows that Whelan purchased the premises in dispute from Geisse, by a deed dated 31st January, 1846, which was recorded in Schuylkill county, in Deed Book No. 25, page 358, on the 4th day of February, 1846, almost one year prior to the institution of the first suit. So there can be no doubt but that Whelan really was a privy of Geisse's at that time, of which Lykens had record notice.

The principle of former recovery raised in the plaintiff's first

[Lykens v. Tower.]

error is the only real question in this cause, and it will not, there-
fore, be necessary to notice the other errors assigned.

The opinion of the court was delivered by

LEWIS, C. J.—William Whelan claims under a deed from Jacob
Geisse, dated 31st January, 1846. The plaintiff Lykens claims
under a contract with Jacob Geisse dated the 8th of August, 1845.
By that contract Lykens was to build a tavern-house for Geisse,
to be known as the "Eagle Hotel," and to find all the materials.
Geisse was to pay Lykens "the sum of $7000 as the work pro-
gresses, in order to purchase materials and pay for labour."
It was further provided in the written contract that Lykens
"agrees to take" the lot in controversy "at the price of $700, to
be part of the consideration-money above mentioned; but the said
Lykens is not to have any title to said lot of ground until the
completion of said hotel, at which time the said Geisse agrees to
make him or his assigns a good deed for the same." The points
presented to the court assume that Lykens did enough work on
the house to pay for the lot, and that Geisse and Lykens agreed
that the lot was paid for by work done on the tavern-house, and
that the lot then belonged to Lykens, who thereupon entered into
possession of it, with the assent of Geisse. And the court was
asked to say that these circumstances "vested the equitable title
in Lykens; that he is not obliged to show that he afterwards
finished the building; and that no subsequent breach of the written
contract, if any such occurred on the part of Lykens, would divest
the equitable title acquired by Lykens in the lot." These points
were answered in the negative.

We do not understand the evidence as tending to prove that
Geisse at any time agreed to part with his legal title to the lot
until the contract was complied with by Lykens; that legal title
had been expressly reserved as a security until the contract was
complied with. Although it was contemplated by the parties that
the lot might be taken by Lykens before the tavern-house was
completed, the title to it depended upon his complying with his
contract. He does not pretend that he has the *legal* title. He
asks to recover on what he calls his equitable title. That equita-
ble title is founded on his address in obtaining possession of it on
the faith of his solemn written contract to erect the tavern-house
for Geisse; and he now asks to retain the lot, although he has
broken his contract with Geisse. It is a rule in chancery, that
he that asks equity must do equity. No chancellor would compel
Geisse to convey this lot to Lykens until the latter performed his
contract for the erection of the tavern-house. The circumstances
stated in the points presented, if established, are not sufficient to
entitle the plaintiff to demand a conveyance of the legal title in
the face of his own acknowledged breach of the contract which

[Lykens *v.* Tower.]

was the consideration for the conveyance, and in opposition to the express written agreement that the deed for the lot was not to be made until the tavern-house was erected by Lykens. The court committed no error in answering these points in the negative.

But it seems that the court held that a former decision in an ejectment brought by Lykens *v.* Whelan, bars the present action. That action was brought on the 19th November, 1846, and the verdict was rendered for the defendant on the 6th June, 1849.

The decision in Seitzinger *v.* Ridgway, 9 *Watts* 496, was made in May, 1840. That decision established the principle that one decree or judgment in an equitable ejectment to compel the performance of a contract was conclusive. But the rule thus established was changed by the Act of 5th May, 1841. The Act of 21st April, 1846, restored it so far as regards actions of ejectment thereafter tried "to enforce the payment of purchase-money wherein time becomes of essence in the finding of the jury, or in the judgment by confession, by fixing a time for such payment." The 5th section of the Act of 30th April, 1850, entitled "An Act to incorporate the Presbyterian congregation of Fruit Hill, in the county of Clearfield, and relative to ejectments," was designed to repeal the Act of 5th May, 1841, and to restore the rule established in Seitzinger *v.* Ridgway. Although of a public character, it was inserted in an Act of Assembly with other sections relative to a private corporation. The sections relative to the private corporation were not entitled to enrolment (and therefore could not have the effect of a law) until the tax was paid. This statute has not been enrolled, because the tax due on private bills has not been paid. But whether this destroys the effect of the 5th section, which relates to a matter of public interest exclusively, may be a question for decision hereafter. In Amick *v.* Oyler, 1 *Casey* 508, no notice is taken of the want of enrolment. It is not necessary to decide the question in this case. On the 8th May, 1850, another act passed, declaring that the 5th section of the Act of 30th April, 1850, shall not have any effect upon actions of ejectment pending at the time of the repeal, and which were brought since the passage of the Act of 5th May, 1841.

When the former ejectment was brought by Lykens *v.* Whelan, and when the verdict was rendered in it, the Act of 1846 was in full force. It is the only statute which can be construed to give the decision in that case the effect of a bar to a second action. But that statute applies exclusively, so far as this case is concerned, to ejectments brought by *vendors* to enforce payment of the purchase-money. The statute of 1846, applies only to cases where "time becomes of essence *in the finding of the jury*, or in the judgment by confession, *by fixing a time for such payment*." In the case before us, nothing whatever is said in the "finding of the jury" about the payment of money at any time. In fact

[Lykens *v.* Tower.]

the action proceeded altogether upon an allegation by the plaintiff that the purchase-money had been paid. It is our opinion that the judgment in the former ejectment is not within the meaning of the Act of 1846. We think, also, that the Act of 30th April, 1850, admitting it to be in full force without enrolment, cannot operate on that action, because a verdict had been rendered in it before the last-mentioned act was passed. This would be the construction independent of the Act of 8th May, 1850. But with the provisions of that Act before us, there is no room whatever for any doubt on that point. We think that the court fell into error in holding that the former decision was a bar to the present action.

Judgment reversed and *venire facias de novo* awarded.